**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN PETER ZIZZO,** | ) | |
| **Plaintiff,** | ) | **Case No. 13-cv-2408** |
| **v.** | ) | |
| **JEWEL FOOD STORES and SUPERVALU,** | ) | **Judge George M. Marovich** |
| **Defendants.** | ) | **Magistrate Judge Jeffrey Cole** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendants' Motion for Summary Judgment is based on building a false premise that is not supported by uncontested facts. Defendants' premise is: the law does not allow a driver with a work-related injury to return to work to perform a driving job if he does not have a CDL and a medical card (i.e., pass a physical examination in accordance with DOT regulations); Plaintiff John Zizzo ("Zizzo") did not have a medical card; and therefore Zizzo could not be allowed to return to work for any driving job. Defendants then try to enhance this erroneous position by claiming that a driver cannot get a medical card if he is taking narcotics, and Zizzo was taking narcotic pain killers.

However, Jewel's alleged policy of only allowing an employee to return to drive if he had a medical card was a corporate policy, not a DOT requirement. Zizzo was released to return to work in February 2010 with certain physical restrictions that rendered him an individual with a disability within the meaning of the ADA. Zizzo tried to return to work by requesting a position as a Spotter. A Spotter drives vehicles without license plates and therefore must remain on

Jewel's private premises at all times. DOT regulations do not apply to a driver who is driving solely on company premises. This fact is recognized by Defendants, inasmuch as Jewel mechanics—who do not have a CDL or a medical certificate—regularly drive vehicles on company premises.

Furthermore, although Zizzo had taken prescription pain killers at various times, he took them only sporadically. He knew that he could not take them while he was driving, and he did not provide Jewel any reason to believe that he would attempt to drive while under the influence of a narcotic. Defendants failed to even discuss the possibility of accommodating his occasional use of pain killers. Rather, Defendants denied Zizzo any opportunity to be placed in the Spotter job in April 2010, and they even crossed his name off a bid for a Spotter job during Spring 2011.

In addition, Jewel did not strictly abide by its alleged policy of requiring a medical certificate for an employee to drive a vehicle. Not only did mechanics drive Jewel vehicles without having a CDL or a medical certificate, former Union Steward George Selimos is personally aware of situations in which drivers were allowed to drive Jewel vehicles—both on company premises and on public roads—without the driver having a medical certificate.

Accordingly, it is Plaintiff's position that Defendants only gave "lip service" to its duty to engage in an interactive dialogue with Zizzo to determine if his medical condition could be reasonably accommodated. Rather, there is evidence that Defendants did not want an employee with a disability to return to work after a three-year leave of absence, and so they refused to consider his request for a job for which he was qualified.

## II. SUMMARY OF FACTS THAT REQUIRE THE DENIAL OF SUMMARY JUDGMENT[1]

### A. Plaintiff's Initial Request For The Position Of Spotter

Zizzo began working as a driver at Jewel's Melrose Park Distribution Center in August 1977. In November 2007, Zizzo was injured on the job. Eventually, he had back surgery. As a result, he has certain permanent work restrictions, including not lifting more than 25 pounds and avoiding repetitive bending. D's SUF ¶¶ 6, 7, 32, 33, 38.

In February 2010, Zizzo was released to return to work with the above-referenced restrictions. In May 2010, Zizzo was asked to attend a meeting with Melinda Pate in the Human Resources Department and Joe Masciopinto, Defendants' Risk Control Manager. The meeting was ostensibly to determine if Zizzo's medical restrictions could be accommodated so that he could return to work. D's SUF ¶¶ 38, 40.

During the course of the meeting, Zizzo told Pate and Masciopinto that he thought he could do the work of Spotter. Although Zizzo told them that it would help if he could be assigned a Spotter jeep with a swivel seat and updated air suspension, he did not state that those modifications were required. Zizzo was aware of swivel seats being available for Spotter jeeps, and he was also aware that there were Spotter jeeps with updated air suspension at the Melrose Park Distribution Center. P's SAF ¶2-4.

### B. Defendants Refused To Consider Plaintiff's Request For The Reasonable Accommodation Of Performing The Spotter Position

Pate and Masciopinto took the position that Zizzo could not be assigned to the job of Spotter if he could not pass a DOT physical and obtain a medical card. They also took the position that an employee could not pass a DOT physical if he was taking a narcotic pain killer,

---

[1] This is a brief summary of Defendants' Local Rule 56.1 Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment ("D's SUF") and Plaintiff's Local Rule 56.1 Statement of Additional Facts that Require the Denial of Summary Judgment ("P's SAF").

such as the hydrocodone and Vicodin that Zizzo took on occasion. Zizzo told them that he did not need a medical card to do spotting. Nevertheless, Pate told Zizzo that he could not be considered for a Spotter job unless he passed a DOT physical and had a medical card. D's SUF ¶¶ 46, 47, 54 and 55; P's SAF ¶28.

DOT requirements that a driver have a CDL and a medical card applied only to drivers who drove on public roads. Since the position of Spotter did not require driving on a public road, Zizzo was qualified for the position. He filed several grievances in an attempt to have the Spotter job awarded to him. P's SAF ¶¶ 15-22, 29.

Around February 2010, Defendant stopped paying Zizzo's medical benefits. Around July 2010, his insurance through COBRA expired. As a result, Zizzo stopped purchasing prescription pain killers. In December 2010, Zizzo went to the VA hospital to obtain medical treatment, since he was a veteran. He received a prescription for a narcotic painkiller in January 2011, March 2011, April 2011 and October 2011. Each prescription was for 30 days of pills, as needed. Zizzo did not refill this prescription in 2012, 2013 or 2014. Because of his workers' compensation claim, which was not settled until August 2013, Zizzo believed that the Defendants were aware of the fact that he did not have a prescription for narcotic pain killers during most of 2010, most of 2011, and 2012-2013. P's SAF ¶¶ 30-31.

**C. <u>Plaintiff's Bid For A Spotter Position</u>**

In April or May 2011, Zizzo was called by a Union Steward and invited to bid on a Spotter job. Zizzo then went to Jewel's Melrose Park Distribution Center and signed a bid sheet. Zizzo's bid was crossed out by the company and less senior employees were then assigned to the available Spotter jobs. P's SAF ¶¶ 5-8; Answer to Complaint ¶¶ 28-29.

**D. Defendants' Pattern Of Denying Reasonable Accommodation To Individuals With A Disability**

Zizzo filed a Charge with the EEOC in October 2010 alleging he had a disability and had been denied a request for reasonable accommodation. This Charge was based principally on the Defendants' refusal to provide him the opportunity to perform the job of Spotter. P's SAF ¶¶ 9-13.

On September 13, 2012, the EEOC issued a Determination finding reasonable cause to believe that Zizzo had been discriminated against because of his disability in violation of the ADA. P's SAF ¶13.

Defendants have a history of discriminating against individuals with a disability by denying reasonable accommodations. In 2009, the EEOC filed a lawsuit against the Defendants alleging that they violated the ADA by failing to reasonably accommodate employees on a medical leave of absence. *EEOC v. SuperValu*, 2009-cv-5637 (N.D. Ill.). The lawsuit ended in a Consent Decree that was entered in January 2011. Zizzo was not covered by that Consent Decree because he had not been discharged. Defendants claim that Zizzo is still on a "leave of absence"—even though they claim his medical condition cannot be reasonably accommodated. D's SUF ¶ 80. In March 2013, Defendants were held in contempt of court for failing to abide by the Consent Decree. P's SAF ¶ 11, Exhibits D & E.

**E. Defendants Do Not Require Non-Disabled Employees To Have A Medical Card To Drive Spotter Jeeps (Or Tractor-Trailers)**

There were employees that performed the job of Spotter even though they did not have a CDL (which Zizzo does have) and/or did not have a medical certificate. Jewel mechanics, who are not required to have a CDL or a medical certificate, would regularly drive Spotter jeeps and would use those jeeps to back trailers into bays at the dock. Additionally, Jewel mechanics would not only drive tractor-trailers on company premises, they would occasionally drive a

tractor-trailer on public roads to get the tractor-trailer back to the Melrose Distribution Center. P's SAF ¶¶ 15-21.

There were drivers that Jewel knowingly allowed to drive to work while they were taking pain relievers with narcotics. Additionally, there were Jewel drivers unable to get a medical card and who were assigned various driving jobs. P's SAF ¶¶ 18-21.

Zizzo drove his car throughout 2010-13, and continues to do so in 2014. At no time during the years 2010-2014 has Zizzo had an automobile accident or a moving violation. P's SAF ¶22. There was no legal or contractual reason why Defendants could not have allowed Zizzo the opportunity to perform the spotting job when he specifically requested the opportunity to try.

## III. ARGUMENT

Summary judgment is not warranted where, as here, genuine issues of material fact must be decided at trial. A genuine issue of material fact should be tried if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "In reaching a conclusion as to the presence of a genuine issue of material fact, we must view the evidence and draw all inferences in a way most favorable to the nonmoving party." *Id.*

"To establish a claim for failure to accommodate, a plaintiff must show that: (1) [he] is a qualified individual with a disability; (2) the employer was aware of [his] disability; and (3) the employer failed to reasonably accommodate the disability." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) (citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001)). The ADA definition of a qualified individuals includes, in relevant part: "'an individual with a disability who, with or without reasonable accommodation, can perform the

essential functions of the employment position that such individual holds or desires.'" *Bombard*, 92 F.3d at 563 (quoting 42 U.S.C. § 12111(9)). Defendants do not dispute that Zizzo is disabled, P's SAF ¶ 40; rather their Motion and Memorandum are based on an assertion that Zizzo was not a "qualified individual" with a disability. Defendants' Memorandum, p. 8. Defendants' contention that Zizzo "was not qualified to be a driver or spotter as a matter of law" is because "Zizzo admitted that he could not pass the DOT-required medical examination because he was taking narcotic pain medication. . . ." Defendants' Memorandum of law, pp. 10-11. Therefore, the only issue before the court is whether Zizzo was "qualified" to be a Spotter. Since genuine issues of material fact must be decided to resolve that inquiry, summary judgment must be denied.

**A. <u>Zizzo Is Qualified To Perform The Spotter Position Under The ADA</u>**

As explained in Plaintiff's Statement of Additional Facts, Zizzo has been qualified to perform the essential functions of the Spotter job since at least May 2010. Where, as here, "the evidence of actual experience of past and present incumbents in the job and similar jobs conflicts with the employer's judgment about which functions are essential," a question of fact exists and summary judgment should be denied. *Miller v. Illinois Dept. of Transportation*, 643 F.3d 190, 197 (7th Cir. 2011) (citing 29 C.F.R. § 1630.2(n)(3)).

**1. It is not an essential function of the Spotter job that drivers have a CDL and a medical certification**

Defendants contend that Zizzo was not a "qualified individual" for whom they had to consider a reasonable accommodation because he did not have a CDL and a medical certification. In fact, Zizzo did have (and still has) his CDL. P's SAF ¶12. Furthermore, he was not required by law to have a medical certification to perform the job of Spotter. In determining whether a job function is essential, courts will "look to see if the employer actually requires all

employees in a particular position to perform the allegedly essential functions." *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 674 (7th Cir. 1998). Here, Defendants claim there is a blanket policy set forth in the job description that requires all drivers and spotters to hold a valid CDL. In fact, there were employees that performed the job of Spotter who did not have a CDL and/or a medical certificate. Jewel mechanics, who are not required to have a CDL or a medical certificate, regularly drive Spotter jeeps and use those jeeps to back trailers into bays at the dock. Additionally, Jewel mechanics occasionally drive a tractor-trailer on public roads to get the tractor-trailer back to the Melrose Distribution Center. P's SAF ¶¶ 15-21.

Defendants rely on *Gaspar v. DS Waters of Am.*, Case No. 11 C 7465, 2013 WL 2355994, at *5 (N.D. Ill. May 22, 2013), and *Thoms v. ABF Freight Sys., Inc.*, 31 F. Supp. 2d 1119, 1127 (E.D. Wis. 1998), for their assertion that it is a defense to an ADA discrimination charge that an action is mandated by another federal law. These cases are distinguishable, however, because the Department of Transportation does not require that Spotters have a CDL. As Defendants' Memorandum states, DOT does not require a person to have a CDL if he drives "wholly on private property, not open to public travel." Defendant's Memorandum, p. 10. They claim that the Distribution Center is "open to public travel" because non-Jewel employees make deliveries there. The mere fact a non-Jewel driver may drive on Jewel's private premises to make a delivery to Jewel does not make it "public travel." *See Buscorina v. TQ Logistics, Inc.*, Case No. 08-3882, 2010 WL 3211708 at *4 (D. S. C. 2010). If so, every parking garage, residential driveway and school parking lot would lose its status as private property, and we would all need a CDL and medical certificate to drive there! Furthermore, how could Defendants allow mechanics who do not possess a CDL or medical certification to drive jeeps and tractor-trailers on Distribution Center premises. SAF ¶ 17.

Therefore Defendants' argument that Zizzo is not qualified for the Spotter job because licensing is required by the DOT is unsupported by federal law. Moreover, it is a question of fact whether having medical certification is an essential function of the position that Zizzo sought as a reasonable accommodation to his inability to qualify for the job of transportation driver.

**2. Plaintiff's occasional use of narcotics to ease his back pain does not prevent him from operating a commercial vehicle on private property**

Defendants claim that Plaintiff cannot perform the essential functions of the Spotter job because he does not have a medical certificate due to his occasional use of narcotics to alleviate his back pain. Defendants' Memorandum, p. 10. However, the regulations on which Defendants rely do not preclude a driver without medical certification from performing the Spotting position. This fact is reflected in *Graham v. Interstate Brands Corp.*, Case no. 00-C-4989, 2002 WL 1632283, at *3 (N.D. Ill. July 23, 2002), where the plaintiff was diagnosed with high blood pressure and was unable to obtain a medical card. As a result, the employer reasonably accommodated him by creating a "spotter" position for him so that he could continue to work. *See also Buscarino*, 2010 WL 3211708, at *9 (denying motion for summary judgment, finding "that to the extent the spotters' activities take place on private roads secured by gates or otherwise, their activities cannot meet the matryoshka-doll-like definition of 'driver' as set forth in the [Motor Carrier Safety] regulations.")

There is even a question as to whether Zizzo's occasional use of narcotics would have precluded him from obtaining medical certification. The first regulation, 49 C.F.R. § 391.41 (b)(12), states that "[a] person is physically qualified to drive a commercial motor vehicle if that person-- . . . (i) Does not use any drug or substance identified in 21 CFR 1308.11 *Schedule I,* an amphetamine, a narcotic, or other habit-forming drug." As an initial matter, 21 C.F.R. § 1308.11

lists hydrocodone as a Schedule II substance, so there is a question as to whether the regulation applies to the medication taken by Zizzo.

The second regulation cited by Defendants, 49 C.F.R. § 391.15(c)(2)(ii), is even less persuasive, since it covers "disqualifying offenses" and prohibits "driving a commercial motor vehicle under the influence of a 21 CFR 1308.11 *Schedule I* identified controlled substance, an amphetamine, a narcotic drug, a formational of an amphetamine, or a derivative of a narcotic drug." This regulation governs "driving under the influence." Here, Zizzo has never been accused of committing any offense related to his driving. He has never been accused of "driving under the influence." He understood that he could not operate a motor vehicle while "under the influence," and there is no reason to believe that he would ever operate a vehicle in violation of the regulations. Furthermore, there is a genuine issue of fact as to whether Defendants prohibited other drivers with a prescription for a narcotic from operating a Spotting vehicle. P's SAF ¶¶ 14, 19, 22.

Zizzo has a current CDL and he has kept his license current since he was placed on disability leave. He has taken his pain medications only as needed and would not drive a vehicle while "under the influence." Therefore, even if the Motor Carrier Act applied to the spotter position—which it does not—Plaintiff was not prohibited by law from being given the opportunity to operate a spotting jeep.

**B. <u>Defendants Did Not Provide Plaintiff With A Reasonable Accommodation When They Refused To Engage In The Interactive Process In Good Faith.</u>**

Zizzo has been trying to return to work at Jewel as a Spotter since 2010, but Defendants refused to allow him to return. In determining whether the employer provided a reasonable accommodation, the "ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *Sears, Roebuck & Co.*, 417 F.3d at 797

(quoting *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998); *see also Cleveland v. Prairie State College*, 208 F. Supp. 2d 967, 978 (N.D. Ill. 2002) (denying summary judgment and noting "The function of the ADA is to force an employer to have an ongoing dialogue with a disabled employee that enables the employer to both 'accommodate' the employer's policies and job requirements yet meet the needs of a 'qualified individual.'")

"After an employee's initial disclosure [of his disability], 'the ADA obligates the employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances.'" *Sears, Roebuck, & Co.*, 417 F.3d at 805, 808 (reversing summary judgment for employer, finding a reasonable jury could find the employer responsible for the breakdown in the interactive process). "[I]f the employee has requested an appropriate accommodation, the employer may not simply reject it without offering other suggestions or at least expressing a willingness to continue discussing possible accommodations." *Id.* at 417 F.3d at 806; *see also Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014) (reversing summary judgment for defendant on reasonable accommodation claim, finding defendant "chose to turn a blind eye and terminate" plaintiff instead of seeking "further clarification from either [plaintiff] or her doctor and disregarded the medical evaluation altogether.").

"[W]hen an employer asserts a blanket safety-based qualification standard—beyond the essential job function—that is not mandated by law and that qualification standard screens out or tends to screen out an individual with a disability, the employer—not the employee—bears the burden of showing that the higher qualification standard is job-related and consistent with business necessity, and that performance cannot be achieved through reasonable accommodation." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 992-93 (9th Cir. 2007)

(citing 42 U.S.C. § 12113(a)) (remanding case to decide whether defendant's policy that drivers of vehicles not covered by DOT regulations pass the same hearing test as drivers of DOT-covered vehicles violated the ADA, and placing burden of production on employer to establish essential functions).

Here, the accommodation Zizzo sought for the driver job he had held for three decades was to be assigned to the Spotter job, a position he had performed in the past. P's SAF ¶24. "It is well established that under the ADA, the employer's duty to reasonably accommodate a disabled employee includes reassignment of the employee to a vacant position for which [he] is qualified." *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 677 (7th Cir. 1998) (citing 42 U.S.C. § 1211(9)(B))).

Pate and Maciopinto met with Plaintiff only one time, in May 2010, to discuss the accommodation he sought. At that time, Plaintiff informed them that he could do the job of Spotter, particularly if a swivel chair was installed in the Spotter jeep. Pate and Maciopinto would not even engage in a discussion of the swivel chair because they wrongly concluded that, since Zizzo had been taking narcotics, he could not obtain the medical certification that they claimed was necessary to perform the job of a Spotter. P's SAF ¶2; D's SUF ¶¶ 46-47. As discussed above, this was based on a Jewel policy that was not required by federal law, and was not uniformly enforced.

If Pate and Maciopinto had exercised their responsibility to consider reasonable accommodations, they would have understood that Zizzo did not take the pain medicines all the time and that, if he was returned to work, he would only take them at night. P's SAF ¶ 14. Rather than follow up with Plaintiff when he filed grievances seeking to be put in the Spotter job, Defendants simply plugged their ears and closed their eyes and held steadfast in their position

that because he took narcotics for pain, they were not required to consider whether he could perform the Spotter job. This demonstrates that the breakdown in the interactive process was caused by Defendants. At the very least, it raises a genuine question of material fact.

Jewel and SuperValu have a pattern and practice of refusing to bring employees with disabilities back to work after their leave. The Defendants reached a Consent Decree with the EEOC in January 2011 settling a discrimination suit brought by the EEOC based on the Defendants' refusal to return employees with disabilities to work with accommodations after they had been out on disability leave for over one year. *EEOC v. Jewel*, Case No. 09-cv-5637 (N.D. Ill.) As part of the settlement, Defendants were required to send written return-to-work letters to the claimants identified in the Consent Decree, but the matter is still pending because Defendants failed to send the letters. P's SAF ¶ 11, Exhibits D &E. When presented with the Defendants' policy and practice of refusing to return employees with disabilities to work after they have been out on leave and the facts specific to Plaintiff's situation, a jury could certainly find in favor of Plaintiff on his failure to accommodate claim. Thus, summary judgment should be denied.

**C. <u>Plaintiff's Prior Receipt Of SSDI Benefits Does Not Estop Him From Filing An ADA Discrimination Suit.</u>**

Defendants also argue that Plaintiff's ADA claim is barred by judicial estoppel because he received SSDI benefits sporadically from 2010 to 2013. Defendants' Memorandum , p. 14. As the Supreme Court has explained, the "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA." *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 797-98 (1999).

Judicial estoppel can be applied where (1) the same party asserts two contradictory positions, (2) the positions are asserted in judicial or quasi-judicial proceedings, (3) the record reflects the party intended the fact finder to accept the facts underlying the contradictory statements, (4) the party making the contradiction was successful and received benefits from the first proceeding, and (5) the two positions actually contradict. *Hillman v. City of Chicago*, 04 C 6671, 2008 WL 5388076, at *1 (N.D. Ill. Dec. 23, 2008). Here, Defendants do not elucidate which statements they claim Plaintiff made in applying for his SSDI benefits that are being contradicted now, nor do they enter Plaintiff's SSDI application into the record. Rather, they seem to argue that simply having received SSDI benefits precludes Plaintiff from pursuing an ADA claim. The Supreme Court has clearly stated this is wrong. *Cleveland*, 526 U.S. at 797-98.

The cases Defendants cite are inapposite because they were decided against plaintiffs who were arguing in their ADA claims that they were not disabled after previously arguing otherwise. *See Hillman*, 2008 WL 5388076, at *2 (holding plaintiff judicially estopped from denying disability because she'd argued in prior workers' compensation matter that she was "totally and permanently disabled from gainful employment"); *Muellner v. Mars, Inc.*, 714 F. Supp. 351, 359 (N.D. Ill. 1989) (holding plaintiff estopped from arguing she was not disabled since she was still collecting SSDI benefits after representing that she was "totally disabled"). There is absolutely no evidence herein that Zizzo's application for SSDI is inconsistent with his request to try the Spotter job.

## IV. CONCLUSION

For the reasons stated herein, Zizzo respectfully requests that this Court deny summary judgment for Defendants with respect to Plaintiff's claim of discrimination in violation of the Americans with Disabilities Act.

Date: May 14, 2014

Respectfully submitted,

JOHN PETER ZIZZO

By: /s/ Steven H. Adelman
One of His Attorneys

Steven H. Adelman
Kevin D. Kelly
Katherine Heid Harris
LOCKE LORD LLP
111 South Wacker Drive, Suite 4300
Chicago, Illinois 60606
(312) 443.0700

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2014, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Mr. Michael A. Warner, Jr. maw@franczek.com
Ms. Lindsey M. Marcus lmm@franczek.com

/s/ Steven H. Adelman