UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN PETER ZIZZO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 13 C 2408 |
| v. | ) |
| | ) Judge George M. Marovich |
| JEWEL FOOD STORES, INC. and | ) |
| SUPER VALU, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Peter Zizzo ("Zizzo") filed suit against defendants Jewel Food Stores, Inc. (his employer) ("Jewel") and Super Valu (the former parent company of his employer). Zizzo alleges that they violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and the Age Discrimination in Employment Act, 29 U.S.C. § 623. Defendants have filed a motion for summary judgment. For the reasons set forth below, the Court grants defendants' motion for summary judgment.

**I.   Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. This Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). It is not enough at the summary judgment stage for either party to *say* a fact is disputed.

The Court considers a fact disputed *only* if both parties put forth admissible evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. The Court enforces Local Rule 56.1 with respect to both parties regardless of whether either party moves to strike non-complying portions, because the purpose of the rule is to make *the Court's* job manageable, not to give litigants additional ammunition to use against one another.

In this case, defendants have objected to some of the evidence plaintiff put forth in opposition to defendants' statement of facts. For example, defendants object that plaintiff has not laid a foundation for some of the statements in the declarations of Zizzo and George Selimos ("Selimos") and that other statements are inadmissible hearsay. Rule 602 of the Federal Rules of Evidence states that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. 602. Thus, a statement that a witness "knows" or is "aware" of something must also include information about how the witness knows such thing. *Ward v. First Federal Savings Bank*, 173 F.3d 611, 618 (7th Cir. 1999) ("The Malkowski affidavit merely asserts that he is 'aware' of the alleged instruction by Pavlic; it does not reveal the source of Malkowski's awareness--be it a written directive from Pavlic, a conversation with him, or merely water-cooler gossip. As such, the affidavit fails to establish that Malkowski has personal knowledge of Pavlic's purported instruction."). Defendants argue that plaintiff has not laid a sufficient foundation for a number of statements in Zizzo's and Selimos's declarations. For example, Zizzo declares, "I know that it is possible to install a swivel seat in a Spotter jeep," but he does not say how he knows. Has he seen it done before? Has he ridden in a Spotter jeep with such a seat? Has he installed such a seat before? The declaration does not say. The Court agrees that this and many other statements

in the declarations lack foundation, and the Court will ignore the portions of the declarations that lack foundation. The Court will also ignore the inadmissible hearsay in those declarations.

The following facts are undisputed unless otherwise noted.

Plaintiff Zizzo is a long-time employee of defendant Jewel, which was, until March 2013, a wholly-owned subsidiary of Supervalu. Jewel operates grocery stores (around Illinois) and a distribution center for said groceries in Melrose Park, Illinois. Zizzo has been a truck driver for Jewel since 1977. As a driver, Zizzo was responsible for delivering and unloading groceries to Jewel stores using a tractor-trailer combination.

The position of driver carries with it certain physical, medical and licensing requirements. The physical requirements of driving include manual dexterity, coordination and balance; the ability to stand, walk and move on concrete floors; the ability to sit for up to 10 hours; the ability to lift between 10 and 100 pounds; the ability to push and pull up to 500 pounds; the ability to climb into the tractor using steps of 21, 39 and 55 inches in height; the ability to endure such physical demands as walking across sloped surfaces, flexing and extending one's neck, rotating one's neck and body, driving a vehicle, removing pallets from a trailer; and the ability to tolerate vibration. Jewel drivers are also required to have a commercial driver's license (which is required by the U.S. Department of Transportation) and meet the physical requirements of the Federal Motor Carrier Safety regulations.

In addition to delivering groceries to stores, Jewel drivers are also responsible for moving semi-trailers around the distribution center. The person who is assigned to move the semi-trailers around the distribution center is called a spotter. Spotters drive specially-designed truck cabs ("spotter jeeps") to move the trailers around the distribution center. Spotters hook the jeep to the trailer, raise/lower the landing gear, lift themselves into the spotter jeep and back trucks into carbo bays. Sometimes, spotters drive tractor-trailers on public roads, although the spotter

jeeps do not have license plates. Jewel requires drivers working as spotters to maintain the same commercial drivers licenses and physical standards as all drivers. The only other employees who occasionally drive spotter jeeps are mechanics, who sometimes need to drive the jeeps that require maintenance back and forth between the maintenance facility and the parking area for jeeps.

Zizzo has been on a leave of absence from Jewel since January 2008, less than two months after he was injured at work. Zizzo suffered a back injury in November 2007. On two consecutive days (the 15th and 16th of) that month, boxes of turkeys fell on Zizzo while he was unloading his truck. (Zizzo's workers' compensation claim arising from the injury was settled years ago and is not at issue in this case.)

One thing Jewel did after Zizzo's injury was assign him to temporary alternative work. Jewel has a practice of assigning workers to light duty work if they suffer a temporary injury. Jewel typically assigns workers with temporary injuries to light office work. The second thing Jewel did, while Zizzo was doing temporary alternative work, was to send Zizzo for treatment at Concentra Medical Center. The doctor Zizzo saw at Concentra Medical Center prescribed Zizzo narcotic pain medication. Zizzo asked the doctor about taking narcotics while working light duty (a time during which Zizzo was not driving a truck). The doctor informed him that he could take the pain medication only at night.

By early January 2008, Zizzo's treating physician took him off of work completely. Zizzo went on a leave of absence from Jewel. By September 2008, Zizzo had surgery on his back. Zizzo remained off of work after his surgery while he spent time first recovering and then doing physical therapy and work hardening.

In January 2010, Zizzo underwent a functional capacity evaluation. Zizzo refused to engage in some of the tasks the specialist asked him to perform, because Zizzo's doctor had told

him not to perform tasks that caused pain. Because Zizzo refused to perform certain evaluative exercises at the functional capacity evaluation, the specialist was unable to complete a valid evaluation.

Jewel then requested that Zizzo undergo an independent medical examination. Zizzo did so in February 2010, when he met with Dr. Frank Phillips ("Dr. Phillips"). Dr. Phillips reported that Zizzo had complained of severe back pain, as well as right buttock and leg pain. Dr. Phillips also noted that Zizzo was taking narcotic medications, including Hydrocodone and Vicodin. Dr. Phillips concluded that Zizzo was permanently restricted to lifting no more than 25 pounds and to avoid repetitive bending. Zizzo agreed with Dr. Phillips's assessment.

On May 5, 2010, Zizzo met with two Jewel employees, Melinda Pate (who, at the time, was Jewel's Director of Human Resources) and Joe Masciopinto (who was Jewel's Risk Control Manager). The purpose of the meeting was to determine whether Jewel could provide a reasonable accommodation that would allow Zizzo to work within his restrictions. At the meeting, Zizzo walked with a cane and mentioned that it had been painful to drive to work. Zizzo stood up for part of the meeting, because sitting for a long period of time caused him pain. Zizzo stated that his back hurt and that he had numbness in his leg.

Not all of the facts about the May 5, 2010 meeting are undisputed. The parties agree that one of the potential accommodations discussed at the meeting was having Zizzo work as a spotter. They discussed possible accommodations to the spotter job that might allow Zizzo to perform the job of spotter. For example, they discussed installing a swivel seat in a spotter jeep so that Zizzo would not need to twist. They also discussed using a hydraulic lift to raise Zizzo into the jeep (although Zizzo says he was kidding about that option). Zizzo says he asked during the meeting for an opportunity to try the spotter job, but that evidence is disputed. Jewel put forth evidence that Zizzo told Pate and Masciopinto that he could not do the spotter job, because

of the need to twist and because the ride would be too bumpy. What is undisputed is that Zizzo told Pate and Masciopinto at the May 5, 2010 meeting that he was taking narcotic medication, which, as even Zizzo understood, would prevent him from passing the driving physical mandated under Department of Transportation regulations.

So, at the May 5, 2010 meeting, Pate, Masciopinto and Zizzo discussed whether Jewel had other jobs that Zizzo could perform. For example, they discussed whether Zizzo could be a dispatcher, but Zizzo stated that he lacked the necessary computer skills for the dispatch position. Zizzo asked whether he could serve on the safety committee, but a full-time position on that committee did not exist.

At the end of the May 5, 2010 meeting, unable to come up with an alternate position, Pate told Zizzo that he would remain on a leave of absence. Pate asked Zizzo to contact her if his restrictions changed so that they could reconsider accommodations. Pate also informed Zizzo that he would need to pass the physical examination in order to be approved to drive. Zizzo understood that if he stopped taking narcotic medication and passed the physical, he might be able to return to work with restrictions.

Zizzo continued to take narcotics as needed. In November 2010, Zizzo went to a VA hospital to obtain and fill a prescription for hydrocodone (a narcotic). Zizzo received treatment and medication there in December 2010, as well. Zizzo also obtained 30-day supplies of narcotics in March 2011, April 2011 and October 2011.

Throughout this time, Jewel and Zizzo stayed in touch about his restrictions. For example, when Zizzo saw his doctor in October 2010, he provided Jewel a note which stated that his restrictions were the same as they had been in February 2010. On January 31, 2011, Pate called Zizzo to check on his status and to see if he was able to return to work. Zizzo said he

could be a driver or a spotter. Pate asked if his restrictions had changed, but Zizzo said they had not changed. Pate told Zizzo to contact her if his restrictions changed.

Pate checked on Zizzo again a few weeks later. On February 11, 2011, Pate sent Zizzo a letter noting that she had not received any updated medical information from him. In her letter, Pate stated, "if your condition has improved and/or your restrictions have changed, please provide me with an update accompanied by updated medical documentation so we can assess through another interactive conversation whether you are able to return to work and perform the essential functions of the driver position." Zizzo never responded to Pate's letter or otherwise provided Jewel updated information. Instead, Zizzo assumed that Jewel had his medical information, because he had filed a workers' compensation claim. Jewel, however, did not have access to the medical information supplied to its third-party administrator for workers' compensation claims.

In May 2011, Zizzo bid on a spotter position after his union steward told him to. Having occasionally worked as a spotter on Sundays before his injury, Zizzo believed spotting would be physically easier for him to do than driving. Jewel removed Zizzo's bid (because it does not allow employees on leaves of absence to bid), and Zizzo never returned to work as a spotter. Zizzo filed a grievance, but the record does not reflect how the grievance was resolved (it is not relevant to this case). Zizzo's May 2011 bid occurred just weeks after Zizzo had filled a prescription for Hydrocodone on April 13, 2011.

Zizzo has received Social Security disability benefits at various times since his leave of absence from Jewel began. By July 2, 2013, Zizzo had switched to Social Security retirement benefits. Jewel considers Zizzo still to be on a leave of absence.

## II.     **Summary Judgment Standard**

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.     Discussion

Defendants first move for summary judgment with respect to Zizzo's claim that defendants discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act. Defendants point out that Zizzo has no proof of discrimination on the basis of age. Zizzo has not responded to defendants' motion with respect to this claim. Because Zizzo has not put forth sufficient evidence from which a reasonable jury could return a verdict for him on his ADEA claim, the Court grants defendants' motion for summary judgment on Zizzo's ADEA claim.

Next, the Court considers Zizzo's claim under the Americans with Disabilities Act. Here, Zizzo claims that defendants violated the ADA by failing to provide a reasonable accommodation. The Americans with Disabilities Act makes it unlawful to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Included in the definition of discrimination under the ADA is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(5)(A).

In order to prevail on his failure to accommodate claim, a plaintiff must establish that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to provide a reasonable accommodation. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). With respect to the third element, the ADA requires the individual and the employer to engage in an interactive process to determine a reasonable accommodation, and the employer is liable under the ADA only if it is responsible for the breakdown in the interactive process. *Sears, Roebuck*, 417 F.3d at 797.

Defendants do not seem to dispute that Zizzo has a disability, but they argue that he is not a *qualified* individual with a disability (and, hence, is not entitled to a reasonable accommodation). The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of the job are essential." 42 U.S.C. § 12111(8).

To begin, it is clear that Zizzo could not perform the essential functions of his original position--driver--with or without a reasonable accommodation, because he did not meet the Department of Transportation regulations for drivers of commercial vehicles. Employers may rely on Department of Transportation regulations when defining the essential functions of a position. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 570-572 (1999). Department of Transportation regulations state that a "person is physically qualified to drive a commercial vehicle if that person . . . (12)(i) Does not use . . . a narcotic, or other habit-forming drug." 49 C.F.R. § 391.41(b)(12)(i). Because Zizzo used narcotics, he could not, as a matter of law, be a qualified individual with respect to his original position of driver.

The question then, is whether he was a qualified individual with a disability in that he could perform the essential functions (with or without a reasonable accommodation) of a different, available position at Jewel. The evidence is undisputed that Pate asked Zizzo whether he wanted to be a dispatcher. It is undisputed that Zizzo responded by informing Pate that he was not qualified for that position, because he lacked the computer skills.

The alternative position Zizzo wanted was the position of spotter. Zizzo has put forth evidence that he requested the spotter position in May 2010, when he met with Pate and Masciopinto. In addition, the evidence is undisputed that Zizzo bid on a spotter position in May 2011. The question is whether Zizzo has put forth sufficient evidence from which a reasonable jury could conclude that he was qualified for the spotter position when he asked for the position. Both times he asked for the position, Zizzo was using narcotics. At the May 2010 meeting (at which Zizzo says he asked for the spotter position), it is undisputed that Zizzo told Pate and Masciopinto that he was taking narcotic medication. It is also undisputed that Zizzo filled a

prescription for narcotic medication on April 13, 2011, just weeks before he bid on the spotter position.

Defendants argue that Zizzo's use of narcotics rendered him unqualified to work as a spotter. Zizzo, on the other hand, argues that the DOT regulations do not apply to the spotter job. Zizzo may be correct that DOT regulations do not apply to the spotter job (a question this Court need not answer), but it was still Jewel's policy not to allow drivers to work as spotters if they used narcotics. Zizzo has not shown that it would be a *reasonable* accommodation for Jewel to alter its policy to allow him to drive a spotter jeep and haul semi-trailers around the Jewel distribution center at a time when he was using narcotics.[1] Requiring Jewel to allow Zizzo–an employee who was using narcotics when he requested the spotter position--to drive spotter jeeps would put Jewel on a razor's edge--liable to Zizzo if it refuses to let him drive spotter jeeps and liable to anyone Zizzo injures if it knowingly allows him to drive. Such an accommodation would not be reasonable, as a matter of law. *Cf. Palmer v. Circuit Court of Cook Cty.*, 117 F.3d 351, 352 (7th Cir. 1997) ("The Act does not require an employer to retain a potentially violent employee. Such a requirement would place the employer on a razor's edge--in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone. The Act only protects "qualified" employees, that is, qualified to do the job for which they were hired; and threatening other employees disqualifies one.").

---

[1] Zizzo did not, for example, at the time he requested the spotter position, provide Jewel with medical evidence that the narcotics (because, say, the dose was so low) did not affect his cognitive function. Even if he had, the Court would tend to disagree with any court that would conclude it is reasonable to require a company to allow an employee using narcotics to drive spotter jeeps.

Zizzo has failed to put forth evidence from which a reasonable jury could conclude that he was a qualified individual, i.e., one who could perform, with or without a reasonable accommodation, the essential functions of his or any other available job at Jewel. Accordingly, defendants are entitled to judgment as a matter of law on Zizzo's ADA claim.

The Court grants defendants' motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, the Court grants defendants' motion for summary judgment. The Court grants defendants summary judgment on plaintiff's ADA and ADEA claims. Case closed.

The Court thanks plaintiff's appointed attorneys for their service on this case.

ENTER:

*George M. Marovich*
George M. Marovich
United States District Judge

DATED: November 12, 2014